It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

PATTERSON, J., concurs in reversal on grounds last stated in this opinion.

BUEDINGEN MFG. CO. v. ROYAL TRUST CO. OF CHICAGO.

(Supreme Court, Appellate Division, Fourth Department. January 5, 1904.)

1. CONTRACT—MANUFACTURING—PRICE—LIABILITY.

Under a contract for the manufacture of puzzles, which were a new venture, not intended to be skillfully or artistically manufactured, and costing less than two cents apiece, the fact that many of them were defective is not, as matter of law, cause for holding the manufacturer debarred from recovering the contract price, where he at all times expressed a willingness to replace imperfect with perfect ones at his own expense.

2. SAME.

Under a contract for the manufacture of puzzles, requiring the manufacturer to ship the puzzles "to some address to be designated in N. below 23d St.," but providing further that all work, as fast as finished, was to be held subject to the shipping instructions of the inventor, and that it was to be the latter's property "after completion," shipment to N. was not a condition precedent to recovery of the contract price of their manufacture, but payment was to be made when they were finished and ready for delivery at the factory.

3. EVIDENCE—CORRESPONDENCE.

Where one party reads in evidence letters constituting part of a line of correspondence bearing on a certain subject, the other party is entitled to read in evidence the full correspondence relating to that subject.

4. SAME—IRRELEVANCY—ERROR.

Where one party reads in evidence letters constituting part of a line of correspondence bearing on a certain subject, entitling the other party to read in evidence the full correspondence relating to that subject, the fact that some portions of the correspondence read by the latter are irrelevant is not cause for reversal, the objectionable portions not having been called to the attention of the court.

Exceptions from Trial Term, Monroe County.

Action by the Buedingen Manufacturing Company against the Royal Trust Company of Chicago. Verdict for plaintiff, and defendant excepts. Exceptions overruled, and judgment ordered for plaintiff on the verdict.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Charles J. Bissell, for plaintiff.
Walter S. Hubbell, for defendant.

SPRING, J. The plaintiff is a manufacturing company in the city of Rochester. In 1899 one J. C. Whipple, of Chicago, was exploiting a patent toy riddle called the "Dewey Puzzle," and under date of January 1, 1899, entered into a contract with the plaintiff whereby it agreed to manufacture 300,000 of these puzzles for $15 per thou-

¶ 3. See Evidence, vol. 20, Cent. Dig. § 453.

sand. 25,000 were to be completed by August 12th, and the entire order of 300,000 on or before September 30th of that year. A description of the samples was contained in the agreement, and Whipple therein agreed to furnish six marbles of assorted colors for each puzzle box, a certain proportion to be delivered to the plaintiff at Rochester on or before August 1st, and the balance before August 17th. In case of failure to deliver the marbles "as herein specified, the putting into the puzzles of the marbles will be forfeited." The puzzled were to be boxed in pasteboard cartons, "and delivered by freight, and freight and carriage paid to some address to be designated in New York City below 23rd St." The agreement further provided:

"All work as fast as finished to be held subject to the shipping instructions of the second party (Whipple), and to be considered as property of the second party after completion. The first party agrees to hold subject to shipping orders the entire order if desired until time specified for completion."

Under the same date a further or collateral contract was entered into between the same parties relating to the manner and time of payment. The said Whipple agreed "to furnish the party of the second part [the plaintiff] a written guarantee from the Royal Trust Company Bank of Chicago, Ill.," and which would secure to the plaintiff the payment of the contract price for manufacturing the puzzles. The party of the first part agreed to furnish a schedule, "to be based upon verified statements from party of the first part that stated quantities of said puzzles have been furnished and are ready for delivery. * * * Terms to be thirty days net or 2% for cash in 10 days on weekly statements furnished by first party to the second party." In compliance with this agreement the defendant wrote to the plaintiff the following letter:

"July 1st, 1899.

"Buedingen Manufacturing Company, 90 W. Broadway, New York—Gentlemen: This bank will honor your thirty day drafts to the extent of forty-five hundred ($4,500.00) dollars, provided they are accompanied by schedules as specified in the contract between your company and J. C. Whipple of Chicago, dated July 1, 1899, and provided said schedules are delivered in accordance with the terms of said contract and the other terms of the contract are complied with by you.          Yours truly,      Royal Trust Co."

This letter, in connection with the agreements recited, constitutes the contract upon which the plaintiff planks its cause of action against the defendant. The plaintiff at once began the manufacture of the puzzles, and shipped out upon the order of Whipple 30,000 to 35,000 in lots of 5,000 or 10,000 to various places—Des Moines, Iowa, Chicago, St. Louis, Atlantic City, and New York, the last shipment being to the latter place. The goods did not meet the sale anticipated, and the project fell flat. It is apparent that many of the first shipments of the puzzles contained those which were defective. Some were stored in Whipple's barn in Chicago, and two years later were examined, and witnesses testified that a large number were improperly made, the most frequent defect being the fading of the picture of Dewey on the outside of the puzzles, and often this portrait was pasted on unevenly. Early in the shipment of the goods, Whipple, either in his own name or in that of the Dewey

Puzzle Company of Chicago, and which was a corporation formed by Whipple and one Riley to exploit these puzzles, informed the plaintiff of the defects, and an extended correspondence ensued in regard to them. The plaintiff promptly informed Whipple that it had on hand a large quantity of the puzzles conforming to the agreement, and offering to pay the freight charges for reshipping the defective puzzles to Rochester, and agreeing to return good puzzles free of charge in their stead. Evidently Whipple was bent on terminating his agreement, and thus getting from under a bad venture, and eventually declined to permit this substitution. Before the Dewey Company appreciated the utter failure of the scheme, it intended to hold the plaintiff for the imperfect puzzles, rather than to consider the agreement terminated by reason of such imperfections. In its letter of September 8th, and which was some time after most of the puzzles shipped had been received, occurred the following:

"It becomes our duty now to advise you that all imperfect puzzles will be held subject to your order, as we cannot use imperfect goods. Please let us hear from you immediately, and we will advise you to stop making puzzles, or find and rectify the mistakes which are being made, otherwise you will have a number of goods on your hands, for, as stated above, we cannot accept them in the condition they are in."

Again, under date of September 12th, the Dewey Puzzle Company, in a letter to the plaintiff, say:

"The imperfect puzzles that we find will be returned to you at your expense, freight both ways, and whatever expense is incurred in sorting out these puzzles will be charged to you."

The plaintiff replied to the first letter referred to, explaining the reason for the imperfections in the earlier shipments of the puzzles, and adding:

"The imperfect puzzles had better be returned to us by freight, when we will have them all carefully gone over and put in proper condition. We, of course will stand all transportation charges. We do not believe that you will find more than probably 10% of the entire lot imperfect. Whatever the amount is we will rectify."

This was reiterated in a letter bearing date September 15th, the plaintiff writing:

"Whatever you find imperfect, you may return to us at our expense and we will send you perfect ones in place."

Finally, on October 5th, the puzzle company, in a long letter going over the defects complained of, undertook to rescind the agreement, advising the plaintiff it held the puzzles on hand subject to the order of the plaintiff, and demanded the return of the money paid. The plaintiff had then manufactured 200,000 puzzles, the great bulk of which was in stock in its manufactory at Rochester, and 100,000 had been cut out and were in process of construction. On the 28th of August the defendant had accepted one of the drafts sued on, which was payable September 27th. Under date of September 23d the defendant wrote a letter advising the plaintiff as follows:

"We hereby notify you that we have been notified by Mr. Whipple not to accept or pay any drafts to your company, until further notice, for the reason that the goods being manufactured are not according to contract. After

your differences have been adjusted they will doubtless notify us to proceed further."

On the same day the defendant received another one of the drafts from the plaintiff set out in the complaint, and to which was attached the required verified statement. The defendant returned the draft to the plaintiff accompanied by a letter saying:

"Herewith we return you said draft for the reason that we have been notified by Mr. Whipple to accept no more drafts for the reason that the goods were not being manufactured and delivered according to contract."

All the drafts which were accepted by the defendant and not paid are set out in the complaint, and the recovery of the plaintiff extended not only to the 200,000 puzzles manufactured, but to the 100,000 which were in process of manufacture, less the cost of completing the same.

The plaintiff contends that the defendant is an original promisor. The defendant, on the contrary, insists that its contract is one of guaranty, and must be governed by the strict rules applicable to that relation. The court below instructed the jury as matter of law that the contract was one of suretyship, and we feel bound to accept that instruction as the correct statement of the liability of the defendant, whatever may be our views upon the subject uncontrolled by the direction of the trial court. From our interpretation of the case, however, the question is one of very little moment. Much of the testimony given upon the trial was taken up with a consideration of the alleged defects in the puzzles. That quite a substantial percentage of the goods first shipped were imperfect in some particulars was apparent. We must, however, bear in mind that they were cheaply made, costing only 1½ cents apiece; that they were a new venture, and it was not intended that they should be skillfully or artistically manufactured. We think it may fairly be said to be within the contemplation of the parties that whatever defective puzzles were in the first shipments should be remedied by the plaintiff. The correspondence both on the part of Whipple and the defendant warrant this inference. The plaintiff produced quite a large number of witnesses who examined the puzzles stored in the plaintiff's warehouse in Rochester, and the trend of their testimony is that these puzzles complied with the agreement. The plaintiff, in essential particulars, was meeting the duty upon it to manufacture the articles substantially according to the contract, and manifested a willingness to compensate for deficiencies in those shipped on the orders of Whipple. This question was submitted to the jury, and we are not disposed to hold as matter of law that the fact defective puzzles were shipped in the light of the circumstances which appear debar the plaintiff from recovering the fruits of its labor in pursuance of its agreement.

It is insistently urged that the plaintiff failed to comply with that part of its undertaking which required it to ship the puzzles "to some address to be designated in New York City below 23rd St." This provision, it seems to us, was designed not to require shipments to be made to New York City, but to fix the amount of the freight charges for which the plaintiff was liable. The parties put that con-

struction upon it because in the western shipments the plaintiff was allowed for the excess of such charges above the cost to send to New York City. The contract further provided that "all work, as fast as finished, to be held subject to the shipping directions of second party" (Whipple), and it was to be his property "after completion." The delivery therefore was at the factory of the plaintiff, and payment was to be made by the defendant not upon the delivery in New York or elsewhere, but when "the puzzles have been finished and are ready for delivery." Again, no place below Twenty-Third Street in New York was ever designated to the plaintiff. Whipple or the Dewey Puzzle Company gave shipping instructions as the contract contemplated, which the plaintiff conformed to, and it was until the last shipment that any were ordered shipped to New York. No complaint was made that the plaintiff was disregarding its obligation by shipping wherever ordered by Whipple. The puzzles belonged to him, and he could have them sent wherever he listed. Even strictly construed, the clause requiring shipment to New York was not a condition precedent to recovery. The goods might remain in the custody of the plaintiff for any length of time, and the defendant would be liable to pay for them. The plaintiff was to defer the enforcement of its compensation until Whipple made sales or ordered away the puzzles. Its pay day was when it manufactured the goods and had them ready for shipment.

The counsel for the appellant complains vigorously over the reception in evidence of eight letters on behalf of the plaintiff. Four of these were written by the plaintiff to Whipple, or to the Dewey Puzzle Company, and the others by Whipple for himself or representing the puzzle company to plaintiff. Several of them related wholly to the bad condition of the marbles which Whipple had supplied the plaintiff to place in the puzzles. There is no controversy over this subject, for the proof shows unmistakably that many of the marbles were defective. Exhibit 14 was put in evidence by the defendant, and that relates in part to the condition of the marbles. Exhibit 36, one of the alleged obnoxious letters, is replied to by defendant's Exhibit 13, as is also Exhibit 37. Another exhibit—38—is a reply to defendant's Exhibit 22; that is, the defendant insisted in reading certain letters in evidence. This opened the door so that the plaintiff was entitled to the full correspondence bearing upon the subject discussed in the defendant's exhibits. The defendant, having blazed the trees, cannot justly complain because the plaintiff followed along in the trail marked. Scattergood v. Wood et al., 79 N. Y. 263, 35 Am. Rep. 515; Grattan v. Met. Life Ins. Co., 92 N. Y. 276–284, 44 Am. Rep. 372. If there was anything in plaintiff's exhibits not properly called for by the letters received on behalf of the defendant, the objectionable portions ought to have been called to the attention of the court, and undoubtedly they would have been expurgated. It seems to us, as an original proposition, these letters were admissible. The contracts were between Whipple and the plaintiff. The contract of the defendant was made dependent upon these agreements. The performance of the agreement pertaining to the manufacture and shipment of the puzzles was between Whipple and the plaintiff. The puz-

zles were to be satisfactory to Whipple, and the defendant had nothing whatever to do with this part of the agreement. It was simply the paymaster. The letters passing between Whipple and the plaintiff are significant to elucidate the questions litigated. Irrespective of this proposition, however, the letters, as I have already attempted to show, were competent.

The defendant's exceptions should be overruled, and its motion for a new trial denied, with costs, and judgment ordered for the plaintiff on the verdict.

So ordered. All concur, except McLENNAN, P. J., not voting.